No. 5931.

T. H. WYLIE *v.* T. B. POSEY ET AL.

1. JUDGMENT LIEN.—Under the act of November 9, 1866, the judgment lien was lost unless executions were regularly issued, and a break of over twelve months between executions abated the lien. (54 Texas, 243, 370, and 56 Texas, 250.)

2. FRAUD, EVIDENCE OF.—The rule in civil cases, even in the case of

proving the existence of fraud, does not require that the proof be made to a moral certainty or beyond a reasonable doubt.

3. SAME.—The law does not attempt to tell a juror what amount or kind of evidence ought to produce belief in his mind.

4. ESTOPPEL.—An insolvent debtor trading a tract of land for another tract, obtains a deed for the latter, the party trading with the debtor enters into possession, executions against the debtor is levied upon both tracts. *Held* that such levy does not affect the equitable right of the party trading with the debtor to the land he traded for and possession of which he held at the time of the levy, though the legal title was in the debtor at the levy.

5. FACT CASE.—Facts insufficient to prove fraud.

APPEAL from Limestone. Tried below before the Hon. L. B. Bradley.

*A. C. Prendergast,* for appellant: 1. The court erred in charging the jury, "that to prove fraud, it devolves upon plaintiff to establish by a sufficient preponderance of evidence, to the extent of a reasonable certainty that such was the case;" and again: "The evidence must show to your satisfaction to a reasonable certainty that the fraud, etc., existed." (Rev. Stats., 1317; Sparks v. Dawson, 47 Texas, 139; Johnson v. Brown, 51 Texas, 75; Linn v. Wright, 18 Texas, 337; Dwyer v. Bassett, 63 Texas, 277; Willis v. McNeil, 57 Texas, 479; Traylor v. Townsend, 61 Texas, 147; Bump on Fraud. Con., pp. 583–6; 68 Texas, 260.)

2. The testimony was sufficient to establish fraud. (Seligson v. Brown, 61 Texas, 180; Williams v. Barnett, 52 Texas, 130; Edmundson v. Silliman, 50 Texas, 112; Block v. Sweeny, 63 Texas, 419; Van Bibber v. Matthis, 52 Texas, 406; Belt v. Raguet, 27 Texas, 471; Martel v. Somers, 26 Texas, 560; Bump, 205, 200, 201, 266, 257, 23, 24, 25.)

*Kimball & Kimball* and *Burrow & Kincaid,* for appellees·

WALKER, ASSOCIATE JUSTICE. Prior to October, 1872, Wylie instituted suit upon an obligation for eight hundred dollars against T. B. Posey and others, and to foreclose the vendor's lien upon a tract of one hundred and sixty acres of land. March 31, 1877, judgment was rendered for two thousand two hundred and thirty-nine dollars and seventeen cents, gold, and interest at two and one-half per cent per month. June 11, order of sale issued, sale realizing fifty dollars. December 11, 1877, alias ex-

ecution, realizing one hundred dollars.　March 8, 1880, another execution returned no property.　February 1, 1881, a defective record of an abstract of judgment was recorded.　August 25, 1881, execution issued, under which levy was made upon several tracts of land.　Soon thereafter Wylie brought suit to set aside certain conveyances alleged to be fraudulent, and encumbering the title to the land so levied upon, setting up in detail the facts relied upon; asking decree subjecting the land to his lien.

Without attempting a detailed statement of the proceedings, only so much will be here given as are deemed necessary to an understanding of the matters passed upon.

The appellees, T. B. Posey and his wife, entered upon as their homestead, the two hundred acres adjudged them, about January 1, 1880.　Their right depends wholly upon whether the judgment lien existed at that date.

Our courts have held that under the statutes of 1866, the judgment lien is lost unless executions have been regularly issued, and that a break of twelve months between executions will abate the lien.　(54 Texas, 243, Barron v. Thompson; Id., 370, Ficklin v. McCarty; 56 Texas, 250, Williams & Guion v. Davis.)　There was no error, therefore, in the action of the court in holding that the homestead was not liable for the judgment.　The judgment lien did not exist at the time T. B. Posey and family fixed their residence upon the land.

Whether the two hundred and fifty acre tract recovered by defendant R. T. Posey and the fifty-four acres and the one and one-fourth acres recovered by defendant J. S. Posey were subject to the lien fixed by the levy, as claimed, depends upon whether they have established titles thereto free from such fraud as would avoid their claims at the suit of the plaintiff. The plaintiff claims that these lands were fraudulently sold by T. B. Posey to his sons, the said defendants, R. T. and J. S. Posey.

It seems that from 1873 the defendant J. B. Posey has been insolvent.　January 1, 1871, T. B. Posey and his wife, the defendant H. E. Posey, executed to L. A. Stroud a trust deed upon two hundred and seventy-one acres of land to secure a note for one thousand dollars.　In 1875 the defendant R. T. Posey wished to buy this land.　His father, T. B. Posey, told him he could have it if he would pay the Stroud note, and assured him of help in making such payment.　R. T. Posey, with his father as

surety, borrowed seven hundred dollars and paid it to Stroud on the note, agreeing with his father to pay the remainder in cattle at seven dollars each. On this agreement, sixty-one head of cattle were delivered at one time, and an obligation for sixty-four head more, which were delivered, satisfying the Stroud note. These cattle were in different brands, some, and probably the greater part, being in brand of T. B. Posey. Upon an adjustment between the father and his son, R. T. Posey, it was found that the son owed his father eleven hundred dollars, for which a note was executed to the father. It being desired that the title pass for the land to the son, the trustee, L. A. Stroud, made a public sale, and the land was bid off by R. T. Posey, and deed therefor was made to him September 22, 1875, reciting payment of one thousand five hundred and seventy-five dollars. The deed was placed on record at once, and R. T. Posey has held the land ever since. Of this tract twenty acres were subsequently sold for four hundred dollars, which was paid to T. B. Posey upon the note for one thousand dollars. This note was fully paid before lien was fixed by levy upon the land. It is not shown what disposition was made by T. B. Posey of the money he received from his son in payment of the note. The land is estimated as worth from twelve dollars and fifty cents to twenty dollars per acre at the time it was conveyed to R. T. Posey, and at no time since of less value.

The history of the J. S. Posey tracts of fifty-four and one and one-fourth acres, given in the testimony, substantially is as follows: In 1878, J. S. Posey, a minor and owning twenty-five acres without improvements adjoining these tracts, desired to buy them. He asked his father to make the trade for him. The father contracted with the vendor at price of one thousand dollars. J. S. Posey paid in cattle eighty dollars; the father paid the balance, taking a deed in his own name as guardian for J. S. Posey. The deed was not recorded, and on J. S. reaching majority the deed was surrendered and deed made direct to J. S. Posey. He paid his father five mules at five hundred and fifty dollars, two hundred and fifty dollars cash, horse at seventy dollars, cash at several times, over sixty dollars. Full payment was made in 1880. No note was given for the money.

It seems that T. B. Posey gave each of his sons, as soon as they could ride, ten heifer calves, which, with their increase, were kept and owned by his sons.

The court charged the jury, upon the subject of fraud: "It

being alleged by plaintiff that the conveyances held by said defendants R. T. and J. S. Posey to the tracts of land claimed by them are fraudulent, and were executed at the instance and by the procurement of defendant T. B. Posey for the purpose and with the intent to hinder, delay or defraud his creditors, and particularly the plaintiff in this suit; or were intended as gifts by T. B. to said defendants—you are instructed that it devolves upon plaintiff to establish by a sufficient preponderance of evidence, to the extent of a reasonable certainty, that such was the case. Fraud and fraudulent purpose and intent is a fact and may be proven as any other fact in a civil suit. It is not necessary to establish fraud, that it be proven by positive evidence; it may be proven by circumstances surrounding and connected with the transaction; but in either case the evidence must show to your satisfaction, to a reasonable certainty, that the fraud or fraudulent intent and purpose existed at the time of the transaction." This was excepted to and is assigned as error.

As there had been no judgment lien kept up by the regular issuance of executions, nor was the statute (arts. 3153, 3154, 3155 and 3157) complied with so as to fix the lien by the record of a duly certified abstract of the judgment the contention therefore is as to the status of the property at the levy of the execution in August, 1881. The lien sought to be enforced exists, if at all, from the levy of the execution upon the lands and the further fact that the lands were owned by defendant, T. B. Posey, though the legal titles thereto had been placed in his sons, R. T. and J. S. Posey, respectively.

As to the lands claimed by J. S. Posey the testimony is undisputed; it is clear and satisfactory that these lands were bought for J. S. Posey by his father and at his request, and that J. S. paid his father the full purchase money advanced. We find no evidence of fraud in the transaction and the details of the purchase and of the full payment of the purchase money are given. The father and the son agree in their testimony, besides corroboration from other witnesses appears in the record to all the material parts of the acquisition. The land never was equitably owned by T. B. Posey, and the legal title was vested in J. S. Posey before the levy of the execution.

There could therefore have been no fraud or wrong against the rights of the plaintiff, and the testimony fully shows that

the plaintiff had no cause of action as to these lands against the rights of defendant, J. S. Posey.

The judgment in favor of R. T. Posey, for the two hundred and fifty-one acres claimed by him, presents greater difficulty.

The facts in evidence touching the acquisition of this land by him are not nearly so satisfactory in behalf of either party as should be desired.

The price was inadequate, but of this the jury could judge. The jury may have concluded that T. B. Posey, insolvent, and pressed by his creditors, may honestly have thought it the best he could do to let R. T. Posey have the land upon paying the Stroud incumbrance. But did R. T. Posey pay it? He did pay seven hundred dollars, which he borrowed, with his insolvent father as security. The balance was satisfied by delivery of one hundred and twenty-five head of cattle, at seven dollars each, many of them owned by T. B. Posey. The transaction by which the deed to R. T. Posey was made by the trustee is unusual, but, at most, it is but a badge of fraud. So of any and all of the facts. If, upon deliberation, the jury were not satisfied of the fraud in the acquisition of the land by R. T. Posey, they were required to find against the plaintiff.

The charge of the court cited above required that the plaintiff establish the alleged fraudulent disposition of the property by T. B., and its acquisition by R. T. Posey, by a sufficient preponderance of evidence to the extent of a reasonable certainty that such was the case. * * * And again: "It is not necessary to establish fraud by positive evidence; it may be proved by circumstances surrounding and connected with the transaction; but, in either case, the evidence must show to your satisfaction, to a reasonable certainty, that the fraud or fraudulent intent or purpose existed at the time of the transaction."

The recurrence of the degree or measure of satisfaction to be attained in the minds of the jury before they could find the existence of fraud was calculated to impress the jury, as no doubt it was intended to do, as to its importance.

We are referred in support of this rule to the opinion of Chief Justice Roberts, in Sparks v. Dawson, 47 Texas, 145; but we do not think that the discussion by the Chief Justice is subject to the criticism made by appellant to the charge of the trial judge in this case.

In that case it was held error, as imposing a rule not sanctioned by the law, to charge the jury touching the proof of fraud, that the plaintiff alleging it "should satisfy the minds of the jury beyond a reasonable and well founded doubt that the plaintiff did not have the number and quality of cattle upon the range that the defendant sold him. It devolves upon the plaintiff to make the proof—to satisfy your minds that the defendant did not have the stock that he represented, and not until the plaintiff shows conclusively, by evidence, that the defendant deceived and defrauded him can the plaintiff be called upon to introduce any evidence at all."

In the discussion of this charge, Chief Justice Roberts, in the opinion, contrasts "reasonable certainty" with "absolute moral certainty," from which the limited sense of the former is evident. In the charge given by the trial judge this explanation does not appear.

We may well believe that when the jury were told that plaintiff Wylie must establish the alleged fraud in the transaction of September, 1875, between T. B. Posey and his son, R. T. Posey, by which the land was transferred to R. T. Posey "to the satisfaction of the jury to a reasonable certainty" that they were likely to understand that they should be satisfied beyond a reasonable doubt. A degree of certainty in so common use in criminal trials that it would readily be adopted, as the equivalent to that given as the measure of the degree of confidence to be reached in the belief of the existence of fraud before finding it in the verdict. The jury might consider that while a reasonable doubt remained they could not be reasonably certain, however, the preponderance may be in the testimony. In so doing they could adopt the rule used in criminal but not in civil cases. The law does not attempt to tell the juror what amount or kind of evidence ought to produce belief in his mind. * * * "To do so, to try to give a specific meaning to the word reasonable is, in the words of Sir Fitz-James Stephen, trying to count what is not number and measure what is not space." (Greenleaf on Ev., sec. 13, note *a.*)

We therefore hold that the charge of the court was error, and that it appears probable that the jury were misled thereby in so far as the litigation involves the land recovered by R. T. Posey.

As before stated, the finding in favor of J. S. Posey is so fully supported by the testimony that we do not think as to

him, the plaintiff, could have been injured by the charge. As to the contention arising from the testimony to the half executed contract between T. B. Posey and R. T. Posey, under which R. T. Posey conveyed the sixty acres and was in consideration to have one hundred and thirty-two acres out of the Ann Cox tract it seems that in the decree the one hundred and thirty-two acre tract was subjected to the debt of plaintiff. In equity he can not be entitled to both, the land and its price. It was competent to prove the transaction by parol testimony.

The judgment below is affirmed as to the homestead of two hundred acres adjudged to T. B. and H. E. Posey, and as to the fifty-four and one and one-quarter acre tracts adjudged to J. S. Posey.

As to the judgment affecting the two hundred and fifty-one acres claimed by R. T. Posey and adjudged him the judgment below is reversed and remanded.

*Reversed and remanded.*

Opinion delivered June 5, 1888.