HARMON et al. v. KETCHUM. (No. 10077.)

Court of Civil Appeals of Texas. Dallas. Oct. 22, 1927.

Rehearing Denied Nov. 19, 1927.

**1. Wills ⚖⟲302(1)—Evidence justified finding that will was properly executed, and that attesting witnesses signed in presence of testatrix.**

Evidence justified finding by trial court that will executed in Philippine Islands was legally executed, and that attesting witnesses signed in presence of testatrix.

**2. Wills ⚖⟲183—Letter executed as holographic will, disposing of certain personal effects, revoked former will pro tanto, but otherwise did not affect it.**

Letter executed as holographic will, disposing of testatrix's personal effects in Philippine Islands, containing no language of revocation, and making no mention of prior will, revoked former will pro tanto as to property belonging to testatrix in Philippine Islands, but had no effect on other provisions of will.

**3. Wills ⚖⟲475—Two or more wills should be construed together, if such was testator's intention.**

More than one will may exist at same time, and they should be construed together, if such was intention of testator shown in contents of later will.

**4. Wills ⚖⟲182—Subsequent will does not revoke former, unless it purports to or makes disposition inconsistent with former will.**

Subsequent will does not revoke former will, unless by its terms it purports so to do, or makes disposition of all testator's property, or is so inconsistent with former that the two cannot stand together.

**5. Mortgages ⚖⟲139—Where testatrix conveyed land by deed intended as mortgage, she owned land at time of death subject to mortgage.**

Where testatrix had by deed in form conveyed land, but it was intended as mortgage to secure payment of loan, testatrix was owner of land at time of death. subject to mortgage.

**6. Wills ⚖⟲384—Instruction that burden of proof was on contestants to show that execution of will was procured by undue influence held not prejudicial error.**

Instruction that burden of proof was on contestants to establish affirmative of question submitted under special issue, whether making and execution of will was procured by undue influence on part of proponent, *held* not prejudicial error, where evidence did not raise issue of undue influence.

**7. Wills ⚖⟲163(2)—That intimate and affectionate relation existed between testatrix and beneficiary did not raise presumption of undue influence.**

That there existed an intimate and affectionate relation between two young women, testatrix and beneficiary, was not sufficient to raise presumption that beneficiary exercised undue influence over testatrix.

**8. Wills ⚖⟲166(2)—Evidence that intimacy existed between testatrix and beneficiary when they taught school together many years before will was executed held too remote to raise issue of undue influence.**

Evidence showing that intimacy existed between testatrix and beneficiary when they had taught school together many years before will was executed *held* too remote and lacking in probative value to raise issue of influence, or to have required submission to jury.

**9. New trial ⚖⟲31—Parties not moving to discharge panel when adversary's counsel made improper remarks in opening statement waived right to complain (Rev. St. 1925, art. 2180, subd. 4).**

Where proponent's counsel, in opening statement, told jury that case was an appeal from an order of county court probating will, and that matter to be determined in district court was whether judgment of county court should be affirmed, which remarks were improper under Rev. St. 1925, art. 2180, subd. 4, but contestants failed to move to discharge panel, they waived right to complain, since complaining party should not be permitted to remain silent, speculate on favorable verdict, and hold in reserve his objection to be raised for first time in motion for new trial.

**10. Appeal and error ⚖⟲1060(1)—Counsel's remarks in opening statement that matter to be determined was whether county court judgment probating will should be affirmed held not prejudicial (Rev. St. 1925, art. 2180, subd. 4).**

Remarks of counsel for proponent in opening statement that case was an appeal from an order of county court probating will, and that matter to be determined in district court was whether judgment of county court should be affirmed, while improper under Rev. St. 1925, art. 2180, subd. 4, *held* not prejudicial.

**11. New trial ⚖⟲29—Refusing new trial sought because of remarks of counsel, which were legitimate and permissible comment on evidence, held not abuse of discretion.**

Where evidence in will contest case showed that beneficiary, proponent, had begun slander suit against contestant, a sister of testatrix,

---

⚖⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and that contestant, in answering, had not pleaded truth of slanderous remarks by alleging in innuendo that language was not intended to mean what it imported, but that language made included testatrix as equally guilty with beneficiary, remarks of proponent's counsel in argument to jury to effect that contestant, in defense of slander suit, did not plead truthfulness of charge, but stood on technicalities, was legitimate and permissible comment on evidence, and court did not abuse discretion in refusing new trial on that ground.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Application by Margaret A. Ketchum for the probate of the will of Clara W. Gilmer, deceased. Will was adjudged to be valid in both county and district courts, and the contestants, Elizabeth Gilmer Harmon and others, appeal. Affirmed.

W. B. Hamilton and Harmon & Harmon, all of Dallas, for appellants.

Webster Atwell, of Dallas, for appellee.

LOONEY, J. This appeal is from a judgment of the district court of Dallas county probating the will of Clara W. Gilmer who suicided in the city of Albay, Phil. Islands, in June, 1922. The will was offered for probate by Margaret A. Ketchum, of Augusta, Ill., who is the principal legatee and executrix in the will. The contestants are the heirs at law of the deceased.

The will was contested on the following, among other grounds, viz.: That the instrument was not the last will and testament of the deceased; that it was not excuted according to statutory requirements; that deceased was of unsound mind at the time the same was executed; and that, if in fact executed, it was accomplished as the result of undue influence exercised by proponent over the said Clara.

On hearing, the will was adjudged to be valid in both the county and district courts.

1. The issue as to the mental capacity of testatrix at the time the will was executed was properly submitted to the jury, and their finding, to the effect that she was of sound and disposing mind, being fully sustained by the evidence, is adopted as our conclusion on that issue.

The other propositions urged by appellants will appear from the discussion.

[1] 2. The contention is made that the will was not executed with the formality required by the statute (Rev. St. 1925, art. 8283), in that it was not made to appear that the attesting witnesses signed in the presence of testatrix.

After the signature of testatrix, there appears at the foot of the will, over the signature of witnesses, the following:

"The foregoing document consists of two pages in addition to this last, and has been executed on the date above mentioned and signed and published by the testator, Clara Gilmer, who declared in our presence, whom she has summoned, that this same document is her last will and testament; and in the presence of each other, we have signed our names as witnesses of the said testament."

On December 2, 1918, testatrix, who was well known to the parties named below, appeared at the office of Manuel M. Calleja, justice of the peace at Albay, with the document in question already prepared, and said she wished to make her will, because she was afraid of dying from influenza, then prevalent in the province. She called to Jose Arboleda and E. Armero, who were passing, and asked them to witness the will. She said it was her last will and testament, and signed the same in their presence, and in the presence of the justice of the peace and Prudencio Ajero, his clerk.

The persons called by her to witness the will signed the same as witnesses, as well as Prudencio Ajero, the clerk, who, it seems, signed at the request of the witness Jose Arboleda. While it was not made to appear by evidence directed specifically to that fact that the witnesses subscribed their names in the presence of testatrix, yet the conclusion from the facts and circumstances is inescapable that such was the case. Testatrix went to the office of the justice of the peace for the purpose of executing her will. She called in from the street two acquaintances who were passing, told them the document was her last will and testament, requested them to become witnesses to its execution by her, signed the same in the presence of these persons, and the witnesses also signed the will. There is no fact or circumstance indicating that there was a break or hiatus in the proceedings. While there was no finding of the jury on this issue, we hold that the evidence justified a finding by the trial court that the will was in all respects legally executed.

[2-5] 3. The contention is made that the document offered for probate was not the last will and testament of testatrix; that she executed and left a subsequent will that, by implication at least, revoked the former.

This contention is based on a letter written by testatrix, dated June 9, 1922, just before she committed suicide, in which she directed the disposition, apparently, of all her personal effects in the Philippine Islands, consisting of a piano, a trunk, furniture, books, vases, curios, etc. This letter was addressed to her friend Ruivivar, in whose house she lived. The letter was properly executed as an holographic will, and, in our opinion, was testamentary in character. Barnes v. Horne (Tex. Civ. App.) 233 S. W. 859. But did it revoke the will of December 2, 1918? We do not think so. The holographic document contained no language of revocation; made no mention of a prior will; and did not purport to dispose of any property, except the per-

sonal effects of testatrix in the Philippine Islands.

In the will of December 2, 1918, proponent was given all personal property then in her possession belonging to testatrix, also 15 acres of land near the city of Dallas, Tex. (of the value, variously estimated, at from $400 to $2,000 per acre); also her interest in certain mining claims in Alaska. She made a number of small bequests of personal effects in the Philippine Islands to certain persons residing there, appointed proponent executrix, without bond, of all her property in America and appointed a Mr. Reyes, of Lucana, Phil. Islands, administrator of all her property in the Islands. She mentioned two suits for the recovery of money then being prosecuted by her, and provided that any moneys accruing to her estate from these suits should be formed into a "Gilmer loan fund," to be under the trusteeship of one Philemon Perez, for the purpose of aiding graduates from certain high schools in the Philippines who, through lack of funds, were unable to obtain a university education. These suits proved futile, as she was defeated in both.

Construing these instruments together, that is, the will of December 2d, 1918, and the holographic instrument of June 9, 1922, we hold that the latter revoked, pro tanto, the former, that is, as to the property belonging to testatrix in the Philippine Islands, but had no effect on other provisions of the will.

It is generally recognized that more than one will may exist at the same time. They should be construed together if such was the intention of testator, and this may be gathered from the contents of the later will. A subsequent will does not revoke a former, unless by its terms it purports so to do, or makes disposition of all testator's property, or is so inconsistent with the former that the two cannot stand together. Jarmon on Wills (6th Ed.) 171; 28 R. C. L. p. 114, § 66; 40 Cyc. pp. 1173–1178; In re Cunnion's Will, 201 N. Y. 123, 94 N. E. 648, Ann. Cas. 1912A, 834; Osburn v. Rochester, etc., Co., 209 N. Y. 54, 102 N. E. 571, 46 L. R. A. (N. S.) 983, Ann. Cas. 1915A, p. 101.

In Re Cunnion's Case, supra, the court used this language:

"A later will is not necessarily a revocation of a prior will, unless by it the prior will is in terms revoked and canceled, or by the later will a disposition is made of all of the testator's property, or the same is so inconsistent with the former will that the two cannot stand together, or that the former will is revoked pro tanto. More than one will may exist at the same time, and they may be construed together, if such was the intention of the testator, and the contents of the later will may be shown to determine the testator's intention."

The same doctrine is announced in 28 R. C. L. p. 114, § 66, as follows:

"Sometimes a testator leaves two or more instruments, each on its face appearing to be a complete will and neither revoking the other, and in such case such instruments should be construed together, if they are not inconsistent and mutually destructive."

Appellants contend, however, that, prior to the execution of the testamentary letter of June 9, 1922, testatrix had disposed of all of her property other than that mentioned therein, and therefore it was a disposition of all property then owned by her.

We cannot assent to this conclusion. It is true she had by a deed in form conveyed the 15 acres of land in Dallas county to Andrew Ketchum, the father of proponent, but the evidence is undisputed that this was intended as a mortgage to secure the payment of money that Ketchum had loaned testatrix. Testator was, therefore, the owner of the land at the time of her death, subject to this mortgage. We are of the opinion, therefore, that the holographic instrument of June 9, 1922, did not revoke the will of December 2, 1918, except pro tanto, and constitutes no barrier to its being probated.

[6-8] 4. The court submitted the issue of undue influence in the following language:

"You are instructed that the burden of proof is upon the contestants to establish the affirmative of question No. 2 by clear and satisfactory evidence."

Special issue No. 2 was as follows:

"Do you find from the evidence that the making and execution of the instrument, which was signed by Clara W. Gilmer on the 2d day of December, 1918, and which is sought to be probated here as her last will and testament, was procured by undue influence on the part of the proponent, Margaret A. Ketchum? Answer 'Yes' or 'No.'"

To which the jury answered "No."

Appellants objected to this submission, and assign error thereon, contending that the same placed a more onerous burden on contestants than the law authorized.

This contention is in our opinion correct. All the law exacted was that the affirmative of the issue of undue influence should be established by a preponderance of the evidence.

Charges of the nature and effect of the one in question have been uniformly condemned by our appellate courts, as will appear from an examination of the following cases: Sparks v. Dawson, 47 Tex. 138; Prather v. Wilkens, 68 Tex. 187, 190, 4 S. W. 252; Wylie v. Posey, 71 Tex. 34, 9 S. W. 87; Galveston, H. & S. A. Ry. Co. v. Matula, 79 Tex. 577, 582, 15 S. W. 573; Wallace v. Berry, 83 Tex. 328, 330, 18 S. W. 595; Cantine v. Dennis (Tex. Civ. App.) 37 S. W 184, 187; In re Bartels' Estate (Tex. Civ. App.) 164 S. W. 859, 867; Carl v. Settegast (Tex. Com. App.) 237 S. W. 238; Reinhardt v. Nehring (Tex. Com. App.) 291 S. W. 873.

The material question, however, for our

consideration is, Did the erroneous charge in any way prejudice appellants? We do not think so, for the following reasons:

The theory of appellants that the will, offered for probate, was executed as the result of undue influence exercised over testatrix by Margaret A. Ketchum, is based on the intimacy that existed between these parties about the year 1903 while they were school teachers in the city of Peoria, Ill. Their intimacy was resented by Lucy Gilmer, a sister, and by John Thornton Gilmer, a brother of testatrix, who, it seems, endeavored to arrest and break it up. In line with this purpose, Lucy Gilmer made certain charges of a slanderous nature against Margaret Ketchum to Clara, in the presence of others. These charges resulted in a suit being filed by Margaret against Lucy for slander. The suit was filed in Peoria county, and, on trial, a verdict and judgment was rendered for the defendant, but on appeal the case was reversed, and afterwards dismissed, but refiled in McDonough county, Ill., and was again tried, resulting in a verdict and judgment for the defendant, which was set aside by the trial court, and in this status was settled by an agreed judgment in favor of plaintiff for a small amount.

In defense of the suit, John Thornton Gilmer, an attorney, brother of both Clara and Lucy, represented Lucy in the defense of the suit, and, in answering for her, the truth of the slanderous remarks was not pleaded, but it was alleged in an innuendo that the language was not intended to mean what it imported, but that it meant something else. The something else that it was alleged this language meant included Clara as equally guilty with Margaret of the gross misconduct charged. As the result of these charges, the publicity of the lawsuit, and the attendant circumstances, Clara Gilmer became estranged from her brother and sisters, and thereafter, until the day of her death, cherished a feeling of bitterness against them. They separated, and, as early as 1905, Clara, while residing in Boston, Mass., executed a will which contains language that fairly interpreted her intense resentment and bitterness. The following are excerpts from this will of July 31, 1905:

"This is the last will and testament of Clara W. Gilmer and any effort on the part of any legatee to invalidate the same will annul his or her legacy. To J. T. Gilmer and Lucy W. Gilmer, for their unprecedented activity in besmirching my reputation, and to Elizabeth G. Harmon for her sublime indifference to the same conduct, $1.00 each and the wish of their mother's youngest daughter for their ultimate success. * * *"

This will concluded as follows:

"Finally, I desire that not one article of the most minute value, which shall belong to me at the time of my death, shall ever be allowed to fall into the possession of J. T. Gilmer, Lucy W. Gilmer or Elizabeth G. Harmon, but that Margaret Adele Ketchum, or her heirs, shall derive full benefit of all I possess. * * *"

On leaving Massachusetts, testatrix went to Alaska, where she taught school until about the year 1912, when she went to the Philippine Islands, and there she remained to the date of her death. So far as disclosed by the record, Clara Gilmer and proponent never met from the time she left Illinois until she died, and no communication between them is disclosed, except a letter written by Clara to proponent, dated December 8, 1918, six days after the will in question was executed, in which testatrix acknowledged receipt of a letter from proponent, no date given, containing certain inclosures. From the context, it is to be inferred that these inclosures were tax receipts and matters relating to the 15 acres of land near Dallas. In this letter is disclosed the only time a will was mentioned between the parties. Referring to an item of expense paid by proponent, testatrix said:

"I will recompense you for the $1.52 you are out on the deal, and as for the mental worry, you will receive your reward for that when I am dead. The whole Islands are in the grip of trancazo. School closed everywhere, and people dying in numbers. I have made a new will for you with the justice of the peace here, so if I am taken, as I pray I may be, all will be straight with you. My love is with you always."

Another reason that contributed to the bequest in favor of proponent is shown by the following excerpt from the will. Testatrix said:

"This gift" (referring to the bequest in favor of proponent) "is in a great measure but the just repayment of funds advanced me by the said Margaret Fesler during times of financial crises in the Philippine Islands."

That there existed an intimate, even an affectionate, relation between these young women, is evident, but this is not sufficient to raise a presumption that proponent exercised undue influence over testatrix. We are of the opinion, therefore, that these facts are entirely too remote and lacking in probative value, as evidence, to raise the issue of undue influence, or to have required its submission to the jury.

The evidence is vague, shadowy, and inconclusive, but, even if of any original value as tending to prove undue influence, it was so far removed in point of time from the execution of the will as to be wholly without value.

In Scott v. Townsend, 106 Tex. 322, 335, 166 S. W. 1138, 1144, the Supreme Court, on the remoteness of this character of evidence, said:

"The important consideration to be observed, however, in this connection is, that the declarations be such as reasonably tend to disclose

what the state of the testator's mind was at the very time of his making the will. If, for instance, they are shown to have been made at a time not in reasonable proximity to its execution, their remoteness condemns them as any efficient or trustworthy aid in determining what his state of mind then was, and they should be excluded for that reason alone."

In Helsley v. Moss, 52 Tex. Civ. App. 57, 113 S. W. 599, this court, in an opinion by Chief Justice Rainey, held that evidence of transactions 15 years before the will was executed, and 18 years before the death of testatrix, offered to show the state of her mind at the time the will was executed, was too remote. Also, evidence of a conversation between husband and wife, offered to show undue influence of the husband over the wife 9 years before the will was made, was too remote, and not admissible.

This doctrine is stated in 28 R. C. L. p. 154, § 108, as follows:

"When a will is contested on the ground of undue influence, the real issue is as to the operation and effect of the undue influence at the particular time of the execution of the will. Evidence is inadmissible which does not tend to show that any influence was exercised at the time the will was executed."

If it be admitted that the intimacy shown to have existed between testatrix and proponent 15 years before the will was executed tended in any sense to establish undue influence, still there is no evidence showing a continuance of such influence down to, or near, the time of the execution of the will.

Mr. Justice Paxson, in Cauffman v. Long, 82 Pa. 72, on the issue of undue influence, among other things, said:

"No right of the citizen is more valued than the power to dispose of his property by will. No right is more solemnly assured to him by the law. Nor does it depend in any sense upon the judicious exercise of it. It rarely happens that a man bequeaths his estate to the entire satisfaction of either his family or friends. In many instances testamentary dispositions of property seem harsh, if not unjust, the result, perhaps, of prejudice as to some of the testator's kindred, or undue partiality as to others. But these are matters about which we have no concern. * * * It is doubtless true that narrow prejudice sometimes interferes with the wisdom of such arrangements. This is due to the imperfections of our human nature. It must be remembered that in this country a man's prejudices are a part of his liberty. He has a right to them; he may be unjust to his children or relatives; he is entitled to the control of his property while living, and by will to direct its use after his death, subject only to such restrictions as are imposed by law. * * *"

Also see Holmes v. Houston (Tex. Civ. App.) 241 S. W. 1039; McElhinney v. Swepston (Tex. Civ. App.) 263 S. W. 940; Estate of Samuel Shell, 28 Colo. 167, 63 P. 413, 53 L. R. A. 387; 89 Am. St. Rep. 181; Knox v.

Knox, 95 Ala. 495, 11 So. 125, 128, 36 Am. St. Rep. 235.

We are of the opinion, therefore, and so hold, that the evidence did not raise the issue of undue influence, and that the error in the charge submitting the same to the jury was not prejudicial to appellants.

[9, 10] 5. Appellants also complain of the action of the court in refusing to grant a new trial because counsel for proponent, in his opening statement, told the jury that the case was an appeal from an order of the county court probating the will, and that the matter to be determined in the district court was whether the judgment of the county court should be affirmed.

Article 2180 (1951) (1297), subd. 4 (Rev. St. 1925), provides that:

"The party upon whom rests the burden of proof on the whole case under the pleadings shall be permitted to state to the jury briefly the nature of his claim or defense and facts relied upon in support thereof."

The remarks of counsel were, in our opinion, improper, because the fact stated could not have been proven in support of proponent's claim. This remark, however, was not objected to at the time by appellants; no request was made by them that the jury be instructed to disregard the same; and no motion was made to discharge the panel, and the question is presented for the first time in a motion for a new trial.

If appellants thought the remarks of counsel were so damaging and lasting as that, the prejudice could not have been removed by an instruction to the jury to disregard the same; they should have moved to discharge the panel, and, failing to do so, in our opinion waived the right to complain. The proper practice, under our view, to avoid the effect of a prejudicial matter of this nature occurring at the very beginning of the trial, is to move to discharge the panel. The complaining party should not be permitted to remain silent, speculate on a favorable verdict, and hold in reserve his objection to be raised for the first time in a motion for a new trial. Lange v. Lawrence (Tex. Civ. App.) 259 S. W. 261; Houston, etc., Co. v. Smith (Tex. Civ. App.) 160 S. W. 435; El Paso, etc., Ry. Co. v. Shaklee (Tex. Civ. App.) 138 S. W. 188, 192. But, aside from the question of practice mentioned, in view of the entire record, we fail to find any reason to believe that the verdict was influenced by the remarks of counsel. We therefore hold that the trial court in concluding that the remarks of counsel were not prejudicial, acted properly within the realm of its discretion. International & G. N. Ry. Co. v. Irvine, 64 Tex. 535; Emberlin v. Wichita Falls, etc., Ry. Co. (Tex. Com. App.) 284 S. W. 539.

[11] We find no error in the refusal of the trial court to grant a new trial because of the

remarks of proponent's counsel in his closing argument to the jury, to the effect that Lucy Gilmer, in defense of the slander suit in the courts of Illinois, did not plead the truthfulness of her charge, but stood on technicalities. This was, in our opinion, a legitimate and permissible comment on the evidence, and was not prejudicial to appellants; hence the trial court did not abuse its discretion in refusing a new trial on that ground.

In propositions 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21, appellants urged errors of the court in rejecting certain evidence. This evidence related to facts and transactions that occurred at least 15 years before the will in question was executed. We are of the opinion that all the evidence, rejection of which complaint is made, was properly excluded on one or more of the following grounds, that is, that the same was either too remote, hearsay, immaterial, irrelevant to any issue, or called for the opinion or conclusion of the witness, and the evidence of Mrs. Peterson, a niece of testatrix, one of the contestants, the exclusion of which is presented in propositions 18, 19, 20, and 21, was properly excluded, in addition to any other, on the ground that the same involved statements by, or transactions with, decedent (Revised Statutes, article 3716 [3690], [2302], [2248], Acts of 1925), and, besides, the evidence was without probative value, and would have added nothing, even if admitted.

Having carefully considered all of appellants' assignments, and finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.