**ELLIS COUNTY STATE BANK, Tracy Fletcher, John A. Hastings, Jr., and Don Harris, Petitioners,**

**v.**

**Glenn KEEVER, Respondent.**

**No. D–3413.**

Supreme Court of Texas.

Argued Sept. 14, 1993.

Decided June 22, 1994.

Rehearing Overruled Sept. 3, 1994.

R. Brent Cooper, Dallas, for petitioners.

Robert E. Wood, Dallas, for respondent.

GONZALEZ, Justice, delivered the opinion of the court in which all members of the Court join in sections I and II.

HIGHTOWER, DOGGETT, GAMMAGE and SPECTOR, JJ., join in sections III and IV.

PHILLIPS, C.J., and HECHT, CORNYN and ENOCH, JJ., join in sections V and VI.

The motions for rehearing are overruled. The opinions of the Court previously issued in this case are withdrawn and the following are substituted in their place.

In this action for malicious prosecution, we determine that the ordinary burden of proof by a preponderance of the evidence remains appropriate rather than the more extraordinary burden of clear and convincing evidence; we hold that the plaintiff is not entitled to prejudgment interest on punitive damages, and we remand this cause to the court of appeals with instructions that they reconsider the Bank's punitive damage points in light of the standards we articulated in *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994). We further decline to obligate the courts of appeals to detail supportive evidence when affirming the sufficiency of the evidence underlying a trial court judgment.

This suit arises out of the indictment and arrest of Glenn Keever. In February 1987, Keever executed a 90–day note for $6,000 with First State Bank of Milford, secured by an interest in his office equipment. Shortly before the due date, Keever filed for Chapter 13 bankruptcy protection. In June 1987, Don Harris purchased all of the assets of First State Bank, including Keever's note, and renamed the bank the Ellis County State Bank.

The parties hotly dispute the ensuing events. Keever testified that when Tracy Fletcher, a bank vice president, first called to discuss the repayment of the note, Keever informed her of the bankruptcy proceeding and provided his attorney's name and the case number. Fletcher nevertheless continued to telephone Keever about the note and sent him a registered letter asserting a default and making formal demand for payment in full or return of the collateral. Keever testified that he telephoned Fletcher to inform her of a creditors' meeting scheduled for October 23, 1987. At that meeting, the bankruptcy court instructed Keever to turn over the collateral to the Bank. According to Keever, in November 1987 Fletcher failed to keep an appointment to pick up the collateral. In the summer of 1988, John A. Hastings, Jr., an attorney for the Bank, made arrangements through Keever's bankruptcy attorney to collect the collateral; again, the Bank failed to keep the appointment.

The Bank has a significantly different version of the events in which, after failing to respond to a number of past due notices and telephone messages, Keever finally agreed to make a payment and sign a new note, but later refused. Fletcher then made a formal written demand for the collateral in August, 1987, and was not advised by Keever until October of the earlier bankruptcy filing in May. Following several unsuccessful attempts to retrieve the collateral, Hastings sought an appointment with the grand jury to seek an indictment against Keever for hindering a secured creditor. After making this appointment, Hastings continued to attempt to negotiate with Keever's bankruptcy

attorney regarding the collateral. Meanwhile, Keever relocated the collateral in violation of the security agreement and without notifying the Bank. While bringing the matter to the attention of the Ellis County grand jury in December 1987, the Bank waited until November 1988 to pursue an indictment against Keever for hindering a secured creditor.[1] Based upon the testimony of Fletcher and Hastings, Keever was indicted on November 29, 1988.[2] Keever turned himself into the police on December 2. Arrested and incarcerated until he made bail,[3] Keever pled not guilty, and eventually had his indictment quashed by the district court. Declining to seek reindictment, the district attorney indicated that she had not learned of the bankruptcy until the arraignment, contradicting claims of Fletcher and Hastings that they had informed the grand jury of this filing.

In his subsequent malicious prosecution action against Harris, Fletcher, Hastings, and the Bank, Keever testified that as a result of the indictment and arrest he suffered from post-traumatic stress disorder and depression. Based on a jury verdict, the trial court rendered judgment for Keever against all defendants, and awarded Keever actual and punitive damages, as well as prejudgment interest.[4] The court of appeals reversed the judgment as to prejudgment interest on the punitive damages, but otherwise affirmed. 870 S.W.2d 63.

## I. Malicious Prosecution—Burden of Proof

The defendants contend that the trial court erred in instructing the jury that the plaintiff must prove the elements of malicious prosecution by a preponderance of the evidence, rather than by clear and convincing evidence. This contention conflicts with our writing that "[n]o doctrine is more firmly established than that issues of fact are resolved from a preponderance of the evidence." *Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206, 209 (1950) (trespass to try title). Over a century ago this Court rejected the view that

> facts [must] be established by evidence with that absolute certainty ... that excludes all reasonable doubt of their existence, as if it were a case of murder or treason, [this] is not a rule applicable to this or any other civil cause.

*Sparks v. Dawson*, 47 Tex. 138, 145 (1877) (fraudulent conveyance). Seeking to avoid a blurring of the distinction between civil and criminal cases, we have regularly found reversible error when a trial court instructed a jury that a greater burden must be met. *See Bluntzer v. Deewes*, 79 Tex. 272, 15 S.W. 29, 30 (1891) (reversible error in charge requiring "a preponderance of the evidence ... with such certainty as will satisfy your minds"); *Wylie v. Posey*, 71 Tex. 34, 9 S.W. 87, 88–90 (1888) (reversible error in charge requiring "a sufficient preponderance of the evidence, to the extent of a reasonable certainty"). Only in extraordinary circumstances, such as when we have been mandated to impose a more onerous burden, has this Court abandoned the well established preponderance of the evidence standard.[5]

1. Tex.Penal Code § 32.33 (1989).

2. An initial grand jury indictment on November 15, 1988 was dismissed because of a typographical error.

3. This process took less than an hour and involved Keever being formally arrested, finger printed, booked, led handcuffed and chained across the courthouse lawn, and incarcerated.

4. In addition to $110,600 in actual damages, the trial court imposed punitive damages of $1,000,-000 against the Bank, $25,000 against Fletcher, $260,000 against Hastings, and $250,000 against Harris.

5. A principal example is with regard to civil commitment proceedings in which, as in other civil litigation, we applied the preponderance standard:

> Some courts in other jurisdictions make a distinction between the standard of clear and convincing evidence and the usual civil standard of the preponderance of the evidence; however, Texas Courts review evidence by but two standards: factual sufficiency and legal sufficiency. The requirement of clear and convincing evidence is merely another method of requiring that a cause of action be supported by factually sufficient evidence.

*State v. Turner*, 556 S.W.2d 563, 565 (Tex.1977). Concerned that an "individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of evidence," the United States Supreme Court

■ Malicious prosecution is no different. Though reference has been made to the importance of "positive, clear and satisfactory" proof[6], all "issues of fact are resolved from a preponderance of the evidence." *Andrews v. Dewberry*, 242 S.W.2d 685, 687 (Tex.Civ. App.—Fort Worth 1951, writ ref'd n.r.e.) (approving a jury instruction regarding a preponderance of the evidence standard in a malicious prosecution action). Texas is certainly not alone in this regard; we have not been made aware of any other jurisdiction that has required an enhanced burden of proof in a malicious prosecution action.

This Court has explained the occasional suggestion that facts must be established by "clear and convincing evidence" as "but an admonition to the judge to exercise great caution in weighing the evidence." *Sanders*, 227 S.W.2d at 209. As noted in *Carl v. Settegast*, 237 S.W. 238, 239–40 (Tex.Com. App.1922), admonitions of this type originate from their early usage with reference to courts of chancery:

> in so far as these rules merely address themselves to the conscience of the chancellor in exercising his province to pass upon the facts or weight of the evidence, they have no place in our jurisprudence, under which ... a jury trial is given as a matter of right, and the province of the jury where the evidence is sufficient to have the issues submitted to them is absolute in determining the facts, subject only to review by the trial court and Court of Civil Appeals.

Only recently we again explained the meaning of such admonitions by relying upon *Sanders* to explain that a requirement of "clear and satisfactory" proof represents only

> an admonition to exercise great caution in weighing the evidence and does not supplant the usual standard of proof by a preponderance of the evidence.

*Rhodes v. Cahill*, 802 S.W.2d 643, 645 n. 2 (Tex.1990) (adverse possession).

What we said with regard to the standard of review for malicious prosecution cases in *Meadows v. Green*, 524 S.W.2d 509, 510 (Tex. 1975) (per curiam), is also applicable in the trial court:

> The requirement of clear and convincing evidence is merely another method of stating that a cause of action must be supported by factually sufficient evidence.

Here, the trial judge correctly charged the jury to apply the traditional burden of proof by preponderance of the evidence. That burden does not change merely because trial judges are admonished to set the verdict aside and order a new trial if the judge is persuaded that the evidence is not "positive, clear and satisfactory."

Nor need we reject our state's well established jurisprudence in order to assure reasonable protection to citizens who report criminal activity to prosecuting authorities. This goal can be satisfied by demanding the full satisfaction of all of the elements of the malicious prosecution tort such as that the defendant lacked probable cause to initiate the prosecution and acted with malice. *See,*

---

commanded us to do otherwise. *Addington v. Texas*, 441 U.S. 418, 427, 99 S.Ct. 1804, 1810, 60 L.Ed.2d 323 (1979). On remand, we adopted a "clear and convincing evidence" standard in such cases. *See State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979); *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex.1980) (relying on *Addington*, establishing that the clear and convincing evidence standard applies to the involuntary termination of parental rights); *See also Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex. 1988) ("[f]or consistency," applying legislative commands in the Family and Probate Codes that paternity must be established by clear and convincing evidence to a claim under the wrongful death statute). Apparently the only other such circumstance was this Court's approval without discussion of the writing of a court of appeals that clear and convincing evidence is required to

rebut the presumption of gift. *See Bogart v. Somer*, 762 S.W.2d 577 (Tex.1988) (per curiam).

6. *Diamond Shamrock Corp. v. Ortiz*, 753 S.W.2d 238, 241 (Tex.App.—Corpus Christi 1988, writ denied); *see also Browning–Ferris Indus., Inc. v. Lieck*, 845 S.W.2d 926, 935 (Tex.App.—Corpus Christi 1992, writ granted) ("clear and convincing"); *Wal–Mart Stores, Inc. v. Medina*, 814 S.W.2d 71, 73 (Tex.App.—Corpus Christi 1991, writ denied) (same); *Ada Oil Co. v. Dillaberry*, 440 S.W.2d 902, 914 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ dism'd) ("positive, clear and satisfactory"); *Montgomery Ward & Co. v. Kirkland*, 225 S.W.2d 906, 909 (Tex.Civ.App.— San Antonio 1949, writ ref'd n.r.e.) (same). None of these cases, however, required any change in the jury instruction regarding burden of proof.

e.g., *Compton v. Calabria,* 811 S.W.2d 945, 949 (Tex.App.—Dallas 1991, no writ) *see also Diamond Shamrock,* 753 S.W.2d at 241. One accused of malicious prosecution is rightly aided by "an initial presumption that a defendant acted reasonably and in good faith and therefore had probable cause." *Akin v. Dahl,* 661 S.W.2d 917, 920 (Tex.1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984). Protection is also afforded to one who makes a full and fair disclosure to the prosecuting attorney. *See Browning–Ferris Indus., Inc. v. Zavaleta,* 827 S.W.2d 336, 345 (Tex.App.—Corpus Christi 1992, writ denied); *Thomas v. Cisneros,* 596 S.W.2d 313, 317 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.); *Ada Oil Co. v. Dillaberry,* 440 S.W.2d 902, 912 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ dism'd). In view of these alternative safeguards for those who honestly and in good faith report criminal activity, we believe the trial court acted properly in following the law concerning the applicable standard of proof rather than changing it.

## II. Court of Appeals Detailing of Supportive Evidence— Actual Damages

■ To discourage a "court of appeals [from] merely substitut[ing] its judgment for that of the jury," we require that every opinion involving a reversal of a trial court judgment on factual insufficiency grounds must

> detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.

7. *See Pool,* 715 S.W.2d at 633, (quoting *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982)):

> It is our practice to liberally construe the points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants.... We look not only at the wording of the points of error, but to the argument under each point to determine as best we can the intent of the party.

*Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). The defendants here urge that we extend this requirement to cases in which the court of appeals upholds the trial court judgment. While an appellate court may sometimes find such an outlining of supportive evidence to be useful, we decline to mandate this. Requiring the detailing of all evidence supporting a judgment is not consistent with *Pool.* We perceive no other justification for imposing this additional burden on the court of appeals.

## III. No Evidence

■ Rather than clearly presenting and briefing a no evidence point concerning their liability, the defendants have lumped a generalized sufficiency of the evidence contention together with their argument for the extension of *Pool*'s detailing of the evidence requirement. With liberal construction,[7] we believe this argument can be construed as urging no evidence that Harris, individually, either gave or participated in any decision to give false testimony or make an incomplete disclosure to the grand jury. In reviewing a "no evidence" point, this court "must consider only the evidence and inferences tending to support the jury's finding, viewed most favorably in support of the finding, and disregard all contrary evidence and inferences." *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex.1992); *State v. $11,014.00,* 820 S.W.2d 783 (Tex.1991) (per curiam); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). Applying this stringent standard here, we agree that there is no evidence to support the finding against Harris individually.

The more indefinite complaint urged jointly by the remaining defendants, Fletcher, Hastings, and the Bank, relates to a claim that Keever failed to establish one element of malicious prosecution—a lack of probable cause to initiate proceedings.[8] This element

8. They also argue that probable cause was established as a matter of law by virtue of a statutory presumption:

> For purposes of this section, a person is presumed to have intended to hinder enforcement of the security interest or lien if, when any part of the debt secured by the security interest or lien was due, he failed:
>
> (1) to pay the part then due; and

may be demonstrated by proof that the defendant made material misrepresentations to the prosecuting officer. *See Compton,* 811 S.W.2d at 950; *Fisher v. Beach,* 671 S.W.2d 63, 67 (Tex.App.—Dallas 1984, no writ); *Terk v. Deaton,* 555 S.W.2d 154, 155 (Tex.Civ. App.—El Paso 1977, no writ); *Andrews,* 242 S.W.2d at 688. The jury heard testimony concerning written misrepresentations that Hastings made to the district attorney[9] as well as to Keever and his attorney.[10] Similarly, Fletcher did not tell the grand jury about appointments that Keever and his bankruptcy attorney made for the Bank to pick up the collateral.[11]

A jury could reasonably conclude that misrepresentations by Hastings and Fletcher constituted evidence of a lack of probable cause. Accordingly, the court of appeals properly concluded that there was some evidence, both direct and circumstantial, that Fletcher and Hastings falsely testified before the grand jury and made material misrepresentations to the Ellis County District Attorney.

## IV. Heightened Appellate Scrutiny

Agreeing with the Court that we should impose neither a higher burden of proof at trial nor a detailing requirement on appeal, Justice Hecht nevertheless suggests that future actions might be resolved through application of a "higher standard of evidentiary review in malicious prosecution cases." 888 S.W.2d at 801 (Hecht, J., concurring and dissenting). This approach has apparently never been discussed by any court or commentator in the history of Texas jurisprudence, nor was it urged or even implied as a basis for reversal by the Bank. Until today's writing, appellate review has addressed either the factual or the legal sufficiency of the evidence presented at trial.

The role of this Court is, of course, constitutionally limited. TEX. CONST. art. V, § 6. As we wrote recently in *Browning–Ferris v. Reyna,* 865 S.W.2d 925, 927–28 (Tex.1993):

> We review only to ensure the proper application of legal standards by other courts and to determine whether there is some evidence which provides a legal basis for a finding.... If more than a scintilla of such evidence exists, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. Indeed, evidence that we might well have discounted, had we been serving as jurors ourselves, cannot now be judicially erased from the record. We are not empowered to convert some evidence into no evidence.

*See also Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 410–11 (1960) ("The sufficiency of the evidence, in so far as measuring its weight and preponderance, is a

(2) if the secured party had made demand, *to deliver possession of the secured property to the secured party.*

TEX.PENAL CODE § 32.33(c) (1989). Even if one assumes that this statute creates a presumption of probable cause, that presumption is rebuttable. If one makes a misrepresentation to the prosecuting authority in order to secure an indictment, he cannot rely on a presumption in a law known not to have been violated. In this record there is some evidence from which the jury could have concluded that Fletcher, Hastings and the Bank did not have probable cause to bring the claim to the grand jury, despite any presumption that could arguably have existed in their favor. Nor, as Justice Hecht suggests, 888 S.W.2d at 801–802 (Hecht, J., concurring and dissenting) did Keever's nondelivery of the collateral afford the Bank probable cause to believe that a penal violation had occurred. *See Anzaldua v. State,* 696 S.W.2d 911, 912 (Tex.Crim.App. 1985) ("The mere refusal to deliver property upon demand does not constitute 'concealing.' "); Op.Tex.Att'y Gen. No. H–980 (1977)

("[M]ere refusal to deliver property to a secured party is not an offense under § 32.33 of the Penal Code.").

9. After advising the district attorney that Keever had "a very violent response" to a collection letter, Hastings admitted at trial that Keever had no such response and had never even received the letter.

10. Hastings conceded at trial that the grand jury was provided letters that he had sent to Keever, which contained misrepresentations regarding the Bank's efforts to collect the collateral.

11. Fletcher's testimony before the grand jury regarding attempted collection of the collateral seemingly conflicts with the trial testimony both of another Bank employee and her husband. Contrary to Justice Hecht's contention, 888 S.W.2d at 802–803 (Hecht, J., concurring and dissenting) the jury could well have inferred from this evidence that Fletcher misled the grand jury regarding Keever's willingness to turn over the collateral.

question of fact; and this court has no jurisdiction over fact questions."); *Turner,* 556 S.W.2d at 565; *Meadows,* 524 S.W.2d at 510.

Justice Hecht intimates an interest in a wholly new, unexplored standard of review. Other than a questionable inference drawn from one decision,[12] 888 S.W.2d at 800 (Hecht, J., concurring and dissenting), the sole writing advanced for this previously unknown approach consists of certain dicta from *Sullivan v. O'Brien,* 85 S.W.2d 1106 (Tex.Civ.App.—San Antonio 1935, writ ref'd):

> [Plaintiffs'] evidence raises no more than mere surmise or suspicion of the fact sought to be established by them. Actions for damages for malicious prosecution are not favored in the law, and require more satisfactory proof than is required in ordinary lawsuits; and certainly recovery in such cases cannot be had upon mere surmise and suspicion.

*Id.* at 1112. This general admonition is hardly a justification for this Court engaging in a heightened review of the evidence, and until today no one has suggested otherwise.

The practical significance of alerting trial judges to the important policy interests at stake in malicious prosecution cases is just that—an admonishment to be cautious in weighing the evidence while continuing to afford the trial court discretion in determining admissibility in accord with the Rules of Evidence. Though it is claimed that under a heightened level of review this Court need not weigh the evidence, Justice Hecht proceeds to suggest precisely that, thus blurring the line between factual and legal sufficiency review. 888 S.W.2d at 800–801 (Hecht, J., concurring and dissenting). Today we preserve our traditional appellate standard of review in accordance with the Texas Constitution rather than pursuing this unpreserved and unwise proposed course.

## V. Prejudgment Interest

■ The district court awarded prejudgment interest on the punitive damages awarded to Keever. The court of appeals reversed this award. 870 S.W.2d at 74.

Keever complains that the court of appeals erred.

In *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 555–56 (Tex.1985), we held that prejudgment interest should not be charged on punitive damages, reasoning as follows:

> Commentators are virtually unanimous in advocating that prejudgment interest not be awarded on future damages and punitive damages.
>
> Punitive damages are intended to punish the defendant and to set an example to others. They are assessed over and above the amount of damages necessary to indemnify the plaintiff. The plaintiff can thus be made whole even if prejudgment interest is not awarded on punitive damages. The plaintiff is likewise unharmed by the defendant's retention of future damages prior to trial since these damages are, by their very nature, unaccrued.

*Id.* (citations omitted).

Keever argues, however, that the Legislature has modified *Cavnar* and authorized prejudgment interest on punitive damages in certain cases by enacting Tex.Rev.Civ.Stat. art. 5069–1.05, § 6(a), which states:

> Judgments in wrongful death, personal injury, and property damage cases must include prejudgment interest. Except as provided by Subsections (b), (c), and (d) of this section, prejudgment interest accrues on the amount of the judgment during the period beginning on the 180th day after the date the defendant receives written notice of a claim or on the day the suit is filed, whichever occurs first, and ending on the day preceding the date judgment is rendered.

Keever argues that since section 6(a) awards prejudgment interest "on the amount of the judgment," and punitive damages are included in that amount, prejudgment interest must therefore accrue on punitive damages.

Section 6(a) was adopted as part of a package of tort reform legislation. John T. Montford & Will G. Barber, *1987 Texas Tort*

---

12. That this Court applied a heightened standard of review mandated by the United States Supreme Court in *Doubleday & Co. v. Rogers,* 674 S.W.2d 751 (Tex.1984), at best indicates only that the Court felt compelled under the Supremacy Clause to engage in such an analysis.

*Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System (pt. 1)*, 25 HOUS.L.REV. 59, 102–03 (1988). Another part of that package was chapter 41 of the Texas Civil Practice and Remedies Code, entitled "Exemplary Damages." Section 41.006 of that chapter states: "Prejudgment interest may not be assessed or recovered on an award of exemplary damages." Today, in *C & H Nationwide, Inc. v. Thompson*, 1994 WL 278167 (Tex.1994), the Court states that section 41.006 limits section 6(a), and that in all actions to which section 41.006 applies, prejudgment interest is not allowed on punitive damages, notwithstanding section 6(a). This conclusion is an integral part of the Court's analysis in the case. The Court holds that section 6(a) requires prejudgment interest to be paid on future damages awarded in a judgment. The Court reasons, in part, that the Legislature must have intended section 6(a) to apply to future damages, or section 41.006 prohibiting prejudgment interest on one kind of future damages, punitive damages, would be superfluous. Accordingly, the Court concludes:

> Prejudgment interest on punitive damages is expressly forbidden by statute for personal injury, property damage and wrongful death actions grounded in negligence or strict tort liability. [section 41.006.] Our reading of section 6(a) would not overrule the express language of section 41.006, as both provisions were part of the same tort reform package.

At *11 (citation omitted). Thus, contrary to the assertion in Justice Doggett's opinion, the Court did not hold in *C & H* that "the phrase 'amount of the judgment' means *all* of the judgment." 888 S.W.2d at 803 (Doggett, J., concurring and dissenting). Rather, the Court specifically stated that in cases covered by section 41.006 prejudgment interest was not allowed on punitive damages.[13]

However, the Court in *C & H* expressly did not decide to what actions section 41.006 applies. The Court wrote:

> Perhaps prejudgment interest would be available on punitive awards not covered by [section 41.006], including treble damage awards under the [DTPA]. This result would be consistent with the legislative purpose of encouraging settlements. As the issue of prejudgment interest on punitive damages outside the statute is not before the Court today, however, we do not reach this question.

At *36 n. 7 (citations omitted). The issue reserved in *C & H* is the very issue we must determine here. If section 41.006 covers this case, prejudgment interest is not allowed on punitive damages.

Section 41.002(a), part of the same chapter which includes section 41.006, states: "This chapter applies to an action in which a claimant seeks exemplary damages relating to a cause of action as defined by section 33.001." Section 33.001 does not actually "define" causes of action, but refers to actions for negligence, strict liability and breach of warranty. Section 41.002(a) does not state that chapter 41 applies **only** to such actions, nor does it imply an exclusive listing. Section 41.002(b) undertakes to list actions to which chapter 41 does not apply. For example, section 41.002(b)(3) lists workers compensation actions. Workers compensation actions are not based on negligence, strict liability or breach of warranty. If the listing in section 41.002(a) were exclusive, there would be no need for section 41.002(b)(3), and other subparts of that section.

Other provisions of chapter 41 indicate that its applicability is not limited only to those actions referred to in section 41.002(a). Section 41.001 defines terms for the chapter such as "fraud" and "malice," which would not be necessary if the chapter applied only to negligence, strict liability and breach of warranty actions. Section 41.003 allows re-

---

**13.** The Court also reasoned that attorney fees and costs should not be considered part of the "amount of the judgment" under section 6(a) in light of separate references to "judgment" and "costs" in TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 2, as well as "common usage in the legal world". 888 S.W.2d at 803. Prejudgment inter-

est itself would also be excluded from "the judgment" for purposes of computing interest; otherwise, the result, interest on interest or compound interest, would squarely conflict with the statutory provision for simple interest. Montford & Barber, *supra*, at 106–07 n. 24.

covery of exemplary damages upon a showing of fraud or malice, as well as gross negligence. The causes of action referred to in section 41.002(a) do not involve fraud or malice. Also, section 41.007 limits exemplary damages to the greater of four times actual damages or $200,000, but section 41.008 states that the limitation does not apply to intentional torts. If section 41.002(a) were exclusive, and chapter 41 did not therefore apply to intentional torts, there would be no need for the provision in section 41.008. Section 41.008 expressly contemplates that section 41.007 might otherwise be applied to intentional torts.

Punitive damages, being inherently penal in character, should not be enlarged by the imposition of prejudgment interest in the absence of an express legislative intent to do so. We find no such intent expressed in section 6(a) when read with chapter 41. Rather, we think that the import of chapter 41, taken as a whole, is that section 41.006 is not limited in its application to the actions referred to in section 41.002(a). We believe section 41.006 was intended to preclude an award of prejudgment interest on punitive damages that might otherwise be required by section 6(a). Accordingly, we conclude that Keever is not entitled to prejudgment interest on punitive damages. In this respect, the judgment of the court of appeals is affirmed.

## VI. Remand in Light of Moriel

■ After assessing actual damages of $110,600 against all defendants, the jury imposed punitive damages against the Bank of $1,000,000.[14] Ellis County State Bank argues that the court of appeals erred when it failed to subject the punitive damage award to proper scrutiny. We agree.

This Court recently imposed new procedural standards for punitive damage awards to help "ensure that such awards 'are not grossly out of proportion to the severity of the offense and have some understandable relationship to compensatory damages.'"

---

Moriel, 879 S.W.2d 10, 28 (quoting Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 22, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1 (1991)). One of these standards requires courts of appeals, when upholding a punitive damage award,

> to detail the relevant evidence in its opinion, explaining why that evidence either supports or does not support the punitive damages award in light of the Kraus, [616 S.W.2d 908 (Tex.1981)] factors.

Moriel, 879 S.W.2d at 31. The "Kraus factors" are those criteria we articulated in Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex.1981), to guide a court of appeals in determining whether a punitive damage award is excessive. They include:

> (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety.

Id. Although the court of appeals in this case listed the Kraus factors, it did not explain how the evidence related to each. Rather, the court of appeals simply concluded as follows:

> The evidence of Ellis Bank's malicious conduct is sufficient to support an award of punitive damages. Where the jury finds that Keever suffered actual damages of $110,600 and finds malice on the part of Ellis Bank, an award of $1,000,000 is not patently unreasonable. This Court cannot say under these facts that the award was so excessive as to indicate passion or prejudice on the part of the jury.

870 S.W.2d at 71. The Bank argues that the court of appeals focused only on the first Kraus factor, the nature of the wrong, without adequately considering the remaining factors. The court certainly did not satisfy the Moriel requirement of explaining why the evidence supports the punitive damages award in light of each of these factors.

---

**14.** The jury also imposed punitive damages of $25,000 against Tracy Fletcher, $260,000 against John Hastings, and $250,000 against Don Harris. The award against Harris is vacated under the Court's judgment. Fletcher and Hastings do not complain that the punitive damages awarded against them are excessive.

Although *Moriel* was decided after the court of appeals' decision in this case, its holding should be applied to a pending case in which a party has preserved the complaint that the court of appeals failed to properly scrutinize a punitive damage award. Here, the Bank specifically argues in its application for writ of error that the court of appeals failed to adequately consider the *Kraus* factors. Also, in its motion for rehearing *en banc* in the court of appeals, the Bank presented a point of error complaining that "the court of appeals erred in failing to order remittitur of punitive damages awarded against the Bank," arguing under this point that the punitive damage award was "patently unreasonable" and "so excessive as to indicate passion or prejudice on the part of the jury." Although the Bank did not specifically refer to the *Kraus* factors in the motion for rehearing, it adequately preserved this issue below under our practice of "constru[ing] liberally points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants." *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

In accordance with this opinion, the judgment of the court of appeals is affirmed in part, and reversed and remanded in part. The court of appeals is instructed to reconsider the punitive damage award in accordance with the standards articulated in *Moriel.*

HECHT, Justice, joined by PHILLIPS, C.J., and CORNYN and ENOCH, JJ., concurring in part and dissenting in part.

My prior opinion is withdrawn and this one substituted.

I agree with the Court that a plaintiff may recover damages for malicious prosecution if he proves each of the elements of that tort by a preponderance of the evidence; he is not required to meet the more exacting standard of proof—clear and convincing evidence—imposed in some kinds of cases.[1] I do not agree, however, that the evidence in this case is legally sufficient to support recovery. I would therefore reverse the judgments of the lower courts and render judgment that plaintiffs take nothing. Given that the Court affirms liability for actual damages, however, I agree that the case should be remanded to the court of appeals to consider the award of punitive damages in light of our recent decision in *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10 (Tex.1994). I also agree that plaintiffs are not entitled to prejudgment interest on punitive damages.

**I**

Conflicting policies define the cause of action for malicious prosecution. On the one hand, persons wrongly accused of crimes should not be without remedy. On the other, the prospect of that remedy must not be so formidable as to discourage the reporting of criminal conduct to the authorities. As we observed long ago:

It is important that every citizen should be protected against malicious prosecutions, and it is equally important that crimes should be punished, in order that the law-abiding citizen may be secure in life, liberty, and property. To make the citizen liable to be mulcted in damages for an honest discharge of duty is to give immuni-

---

1. *E.g., Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex.1988) (paternity of illegitimate person in wrongful death case); *Doubleday & Co. v. Rogers*, 674 S.W.2d 751 (Tex.1984) (actual malice in a defamation case involving public officials and public figures); *State v. Addington*, 588 S.W.2d 569 (Tex.1979) (civil commitment proceedings); *In re G.M.*, 596 S.W.2d 846 (Tex. 1980) (involuntary termination of parental rights); Tex.Fam.Code §§ 11.15, 15.024–.025 (same); *id.* § 5.02 (separate property); *id.* §§ 12.02(b), 13.05 (paternity); *id.* § 21.32 (court ordered child support); Tex.Health & Safety Code §§ 81.169, .171–.173, .190 (court ordered management of persons with communicable diseases); *id.* §§ 462.067–.069, .075 (court ordered treatment for chemically dependent persons); *id.* §§ 574.031, .033–.035, .069, .106 (court ordered mental health services); Tex.Prop.Code §§ 92.0563, .058 (landlord/tenant statutory remedies); Tex.Tax Code §§ 151.159, .307 (tax exemption for export goods); Tex.Prob.Code § 42 (paternity); *id.* § 145 (approval of independent estate administration); *id.* §§ 222, 761 (removal of personal representative, guardian); *id.* §§ 236, 236A, 776–77 (use of estate/trust corpus); *id.* § 684 (appointment of guardian); *id.* § 438 (presumption of revocable trust); Tex.R.Disciplinary P. 9.04 (1992), *reprinted in* Tex.Gov't Code, tit. 2, subtit. G app. (Supp.1994) (defense to attorney reciprocal discipline).

ty to crime, and to weaken the restraining power of the criminal law, thereby endangering the security of law-abiding people. *Sebastian v. Cheney,* 86 Tex. 497, 25 S.W. 691, 694 (1894). To balance these competing interests properly, the law allows recovery for wrongful prosecution, but only in very carefully defined circumstances.

In *Sullivan v. O'Brien,* 85 S.W.2d 1106, 1112 (Tex.Civ.App.—San Antonio 1935, writ ref'd), the court stated: "Actions for damages for malicious prosecution are not favored in the law, and require more satisfactory proof than is required in ordinary lawsuits. . . ." The courts of appeals have elaborated on this statement. In *Ada Oil Co. v. Dillaberry,* 440 S.W.2d 902, 914 (Tex.Civ. App.—Houston [14th Dist.] 1969, writ dism'd w.o.j.), the court stated: "The proof in malicious prosecution actions must be of a higher degree than that ordinarily required in civil cases, and it must be positive, clear and satisfactory." Similarly, in *Diamond Shamrock Corp. v. Ortiz,* 753 S.W.2d 238, 241 (Tex.App.—Corpus Christi 1988, writ denied) (citations omitted), the court stated: "Actions for malicious prosecution are not favored in the law. Not only does public policy discourage the bringing of such actions, but also the proof must be positive, clear and satisfactory." Again, in *Browning–Ferris Indus. v. Lieck,* 845 S.W.2d 926, 935 (Tex.App.—Corpus Christi 1992), *reversed* 881 S.W.2d 288 (Tex.1994), the court stated: "We recognize that the malicious prosecution cause of action must be proven by clear and convincing evidence."

Some courts of appeals have gone further and suggested that the burden of proof should be higher in malicious prosecution actions. In *Wal–Mart Stores, Inc. v. Medina,* 814 S.W.2d 71, 73 (Tex.App.—Corpus Christi 1991, writ denied), the court stated: "The burden of proof is higher [for malicious prosecution cases] than for most civil cases." The court in *Montgomery Ward & Co. v. Kirkland,* 225 S.W.2d 906, 909 (Tex.Civ. App.—San Antonio 1949, writ ref'd n.r.e.) (citations omitted), explained:

Not only does [the policy favoring exposure of crime] discourage the bringing of [malicious prosecution] actions, but also

the proof must be of a higher degree than that ordinarily required in civil cases. The usual statement is that in malicious prosecution actions the proof must be positive, clear and satisfactory.

The burden of proof was upon [plaintiff] to show by positive, clear and convincing proof that there was no probable cause on the part of [defendant] to believe that [plaintiff] was guilty of embezzling. . . .

Another court has explained, however, that the requirement of clear and convincing evidence does not alter the burden of proof at trial:

In certain types of cases, including damages for malicious prosecution, the facts must be established by clear and convincing evidence. That rule is discussed fully [in *Carl v. Settegast,* 237 S.W. 238, 239–240 (Tex.Com.App.1922) ].

The court in that case, and in the authorities cited therein, points out that the rule in practical effect is but an admonition to the court to use great caution in weighing the evidence.

The doctrine is firmly established that issues of fact are resolved from a preponderance of the evidence, and issues requiring a higher degree of proof than preponderance of the evidence may not be submitted to the jury.

*Andrews v. Dewberry,* 242 S.W.2d 685, 687 (Tex.Civ.App.—Forth Worth 1951, writ ref'd n.r.e.).

Neither our language in *Sullivan* nor the policies governing malicious prosecution actions require a heightened burden of proof in the trial court. As a general rule in most jurisdictions, at least, the standard of proof appears to be a preponderance of the evidence. 54 C.J.S. *Malicious Prosecution* § 83, at 607 (1987); Herbert B. Chermside, Jr., *Cause of Action for Malicious Prosecution of Civil Action* § 42, in 7 SHEPARD'S CAUSES OF ACTION 255 (Wesley H. Winborne et al. eds., 1985); 52 AM.JUR.2D *Malicious Prosecution* § 136, at 268 (1970). I agree with the Court that Texas should follow this same rule.

The insistence in *Sullivan* of "more satisfactory proof than is required in ordinary

lawsuits" does serve as an admonishment to judges in weighing the evidence. This applies, as the Court notes, to trial judges in deciding whether to set aside a verdict and order a new trial, *see Sanders v. Harder,* 148 Tex. 593, 227 S.W.2d 206, 209–210 (1950), and to appellate judges in reviewing the factual sufficiency of the evidence, *see id.; Meadows v. Green,* 524 S.W.2d 509, 510 (Tex.1975) (per curiam); *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 410–11 (1960). In addition, trial judges should exercise caution in admitting evidence in such cases.

## II

*Sullivan* may require more than judicial caution in weighing the evidence in malicious prosecution cases. Caution in weighing the evidence is required in every case, not just malicious prosecution cases; no case allows rash weighing of the evidence. It is well to emphasize the importance of weighing the evidence in malicious prosecution cases when such important policies are in conflict, but the admonishment to caution may not be enough to protect the delicate balance between these policies.

Our requirement in *Sullivan* of "more satisfactory proof" refers to the quality of evidence necessary to support liability. A jury may find that the credible evidence preponderates in favor of the plaintiff, but if that evidence, when reviewed, is not clear, convincing, positive and satisfactory, it should not support liability. One may argue that this standard should be applied in determining whether to grant a directed verdict, judgment *non obstante veredicto,* or new trial, in deciding motions for summary judgment, and in appellate review of both the factual and legal sufficiency of the evidence.

This higher appellate standard, applied to a review of the legal sufficiency of the evidence, should not require a weighing of the evidence. In the usual case, evidence is legally sufficient to support liability if it is more than a scintilla, that is, if there is at least some probative evidence, no matter how small. Applying this higher standard to malicious prosecution cases, liability would be sustained only if the supporting evidence is clear, convincing, positive and satisfactory.

Probative evidence which does not meet this standard would not be legally sufficient for liability.

This Court has applied a heightened clear-and-convincing standard of evidentiary review in *Doubleday & Co. v. Rogers,* 674 S.W.2d 751 (Tex.1984), in reviewing the evidence of malice in a defamation case. There the standard was required by the United States Constitution. The Court did not consider that applying the standard required a weighing of the evidence which the Texas Constitution commits exclusively to the courts of appeals, TEX. CONST. art. V, § 6, or it would have remanded the case to that court to perform the required review. There is no reason why the Court could not perform the same review in other cases. Whether *Sullivan* and the important policy of encouraging the reporting of criminal activity require a higher standard of evidentiary review in malicious prosecution cases is an issue which need not be decided in this case.

## III

Regardless of whether the evidence in this case is reviewed with the special scrutiny the Court says must be used in malicious prosecution cases, or only the ordinary scrutiny required in any case, it cannot support recovery against Ellis County State Bank, Tracy Fletcher, its vice president, and John A. Hastings, Jr., its attorney. (I agree with the Court that there is no evidence to support recovery against the owner of the Bank, Don Harris.)

One element which a plaintiff must prove to establish a cause of action for malicious prosecution is that the defendant had no probable cause for initiating or procuring criminal proceedings. We have defined probable cause as the existence of such facts and circumstances as would excite belief in the mind, of a reasonable person, acting on facts within his knowledge that the person was guilty of the crime for which he was prosecuted. *Akin v. Dahl,* 661 S.W.2d 917, 921 (Tex.1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984). Glenn Keever was prosecuted for violating section 32.33 of the Penal Code, which states in part:

(b) A person who has signed a security agreement creating a security interest in property ... commits an offense if, with intent to hinder enforcement of that interest ..., he destroys, removes, conceals, encumbers, or otherwise harms or reduces the value of the property.

(c) For purposes of this section, a person is presumed to have intended to hinder enforcement of the security interest or lien if, when any part of the debt secured by the security interest or lien was due, he failed:

(1) to pay the part then due; and

(2) if the secured party had made demand, to deliver possession of the secured property to the secured party.

There is no question that Keever failed to pay the $6,000 plus interest which he owed the Ellis County State Bank in May 1987, or that after the Bank made demand for return of the collateral, he refused to deliver possession of the property to the Bank for well over a year. There is evidence that Keever offered to allow the Bank to come get the collateral, and evidence that the Bank failed to keep appointments to do so. But it is undisputed that Keever never *delivered* or even offered to deliver the collateral to the Bank, which he was obliged to do by his security agreement with the Bank. After its loan was in default for over a year and Keever had paid nothing and had not turned over any of the collateral, the Bank had reason to believe that Keever was violating section 32.33.

A defendant in a malicious prosecution case is presumed to have acted reasonably, in good faith, and with probable cause, until the plaintiff produces contrary evidence. *Akin,* 661 S.W.2d at 920. In this case, there is no direct evidence that the Bank, Fletcher and Hastings lacked probable cause for initiating criminal proceedings against Keever. The only evidence at all, cited by the Court, is an inference from a statement made by Hastings and a nondisclosure by Fletcher. Hastings told the district attorney that Keever had reacted violently to a collection letter when in fact he had not. Fletcher failed to tell the grand jury that Keever had made appointments for the Bank to pick up the collateral.

Hastings' misrepresentation was absolutely immaterial. Whether Keever reacted violently or calmly to collection efforts, or whether he reacted at all, has nothing whatever to do with whether he violated section 32.33. Assuming Hastings intentionally lied to the district attorney, one cannot infer from that fact alone whether he had probable cause to think that Keever had violated section 32.33 or not.

Fletcher's "nonstatement" is problematic in several respects. First, Fletcher has not conceded that the Bank missed appointments set up by Keever. Fletcher may have been wrong about this, and there is evidence that she was. But whether she was in fact right or wrong about whether appointments were missed—and since the jury could have found she was wrong, we will assume that they did—one cannot infer from evidence of missed appointments that Fletcher's failure to mention them to the grand jury shows that she had no reasonable belief that Keever had violated section 32.33. The reason Fletcher did not tell the grand jury about missed appointments may just as well have been that she did not believe any had occurred. Second, omitting information is not the equivalent of giving false information. A person may fail to state information because it slips his mind, or because he does not consider it important, reasons which cannot justify giving false information. Inferring a lack of probable cause from a failure to disclose information is more difficult than inferring the same from a misrepresentation of facts. Thirdly, and most importantly, the omitted information is immaterial in this case. There is disputed evidence that Keever made appointments with the Bank to pick up the collateral, and the Bank failed to appear. But there is undisputed evidence that the Bank made appointments which Keever failed to keep. And there is no question that Keever never delivered the collateral to the Bank, as he was obliged to do, for more than a year after his loan was in default. It cannot reasonably be inferred from the fact that the Bank missed appointments with Keever—assuming, as the jury could

have found, it is a fact—that the Bank had no probable cause to believe that Keever was violating section 32.33.

By any measure, there is no probative evidence that the Bank and its employee and attorney lacked probable cause to procure the criminal prosecution of Keever. For this reason, I would reverse the judgment of the court of appeals and render judgment that plaintiff take nothing.

## IV

The Court, however, affirms the liability of the Bank and its vice president and attorney, individually, for malicious prosecution. Given this decision, the award of punitive damages must be reviewed by the court of appeals in accordance with *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex.1994). Accordingly, I join in that part of the Court's judgment remanding the case to the court of appeals. I also join the Court in holding that prejudgment interest should not be awarded on punitive damages.

DOGGETT, Justice, joined by HIGHTOWER, GAMMAGE and SPECTOR, JJ., concurring in part and dissenting in part.

My prior opinion of May 11, 1994, is withdrawn and the following is substituted in its place. For the sake of clarity for the reader of today's opinion, Justice Gonzalez has adopted in full my earlier writing inasmuch as it constituted the opinion of the Court on most of the issues considered. *See* 37 Tex. Sup.Ct.J. 783 (May 11, 1994) (Parts I, II, IV, and V). I therefore join in those portions of Justice Gonzalez's opinion for the Court, but dissent to a separate holding newly announced here, as well as the remand to the Court of Appeals.

## I.

On rehearing, the majority has opted for selective enforcement of a statutory remedy. Keever argues that prejudgment interest on the punitive damages awarded in this case is mandated by the requirement that for "wrongful death, personal injury, and property damage cases.... prejudgment interest accrues *on the amount of the judgment...."* TEX.REV.CIV.STAT.ANN. art. 5069-1.05(6)(a) (Supp.1994) (emphasis added). We held in *C & H Nationwide v. Thompson,* 37 Tex.Sup. Ct.J. 149, 160 (Nov. 24, 1993), that the phrase "amount of the judgment" means *all* of the judgment, including future damages.[1] Now this unequivocal statutory command is ignored.

My preference for a plain reading of this statute is buttressed by a plain reading of a second statute. In its express prohibition of prejudgment interest on punitive damages produced by a broad range of nonintentional torts, TEX.CIV.PRAC. & REM.CODE ANN. § 41.006 (Supp.1994), the Legislature excluded intentional torts such as an assault or malicious prosecution. Section 41.006, like all of chapter 41, applies only to "action[s] in which a claimant seeks exemplary damages relating to a cause of action as defined by Section 33.001." TEX.CIV.PRAC. & REM.CODE. ANN. § 41.002(a) (Supp.1994). Section 33.001 includes claims grounded in negligence, product liability and strict liability, but none that are intentional in nature. TEX.CIV.PRAC. & REM.CODE.ANN. § 33.001 (Supp.1994). The denial of prejudgment interest on punitive damages here constitutes a judicial rewriting of section 41.002(a) by extending the exclusion in section 41.006 to a category of claims to which it quite clearly does not apply.[2]

1. In construing a similar statute, California courts have held that prejudgment interest should be awarded on both compensatory and punitive damages in all personal injury cases. In *Greenfield v. Spectrum Investment Corp.,* 174 Cal. App.3d 111, 219 Cal.Rptr. 805, 814 (1985), the California Court of Appeals held:

> [CAL.CIV.CODE § 3291] clearly states that "... the judgment shall bear interest at the legal rate of 10 percent...." There is only one judgment.... In light of the utilization of the term "judgment" in section 3291, both compensatory and punitive damages are encom-

passed therein and prejudgment interest on the punitive damages should be allowed.

*See also Bihun v. AT & T Info. Sys., Inc.,* 13 Cal.App.4th 976, 16 Cal.Rptr.2d 787, 804 (1993) (explaining that the holding in *Greenfield* is "based ... on the statute's provision 'the *judgment* shall bear interest....' (italics added.)").

2. Indeed, the legislature has determined that, with regard to punitive damages, intentional torts are different from, and should be treated differently than, negligence and strict liability cases. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 41.008 (Supp.1994):

The majority's action, moreover, conflicts with the rationale of *C & H* that the Legislature was not solely concerned with compensation for the lost use of money, but also intended to modify the behavior of the parties to encourage settlement. 37 Tex.Sup. Ct.J. at 160–61. While reserving the issue of whether prejudgment interest should be awarded on punitive damages not covered by § 41.006 of the Civil Practice and Remedies Code, Chief Justice Phillips, writing for the Court, noted that such a result "would be consistent with the legislative purpose of encouraging settlement." *Id.* at 161 n. 1. Today's contrary conclusion simply cannot be squared with *C & H*. Therefore, that portion of the judgment of the court of appeals disallowing prejudgment interest on punitive damages should be reversed.

## II.

In *Transportation Insurance Co. v. Moriel,* 879 S.W.2d 10, 31 (Tex.1994), this Court recently declared that a court of appeals "must *hereinafter* detail the relevant evidence" contrary to a jury verdict when upholding a punitive damages award against a challenge based on the factors set forth in *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981) (emphasis added). Today the "hereinafter" requirement is simply read out of *Moriel* and replaced with retroactivity for any "party [that] has preserved the complaint that the court of appeals failed to properly scrutinize a punitive damage award." 888 S.W.2d at 799. But then the Court declines even to adhere to this alteration for here the Bank unquestionably failed to preserve any error on this point. The Bank's primary contention in its motion for rehearing *en banc* in the court of appeals was that the punitive damage award was subject to the requirements of chapter 41 of the Texas Civil Practices and Remedies Code. After devoting six pages of its motion to this argument, the Bank added a paragraph in which, rather than "specifically refer[ring] to the *Kraus* factors," 888 S.W.2d at 799, it complained of the "wholly standardless discretion" with which the jury awarded punitive damages, citing only a concurrence in

Section 41.007 [limiting the amount of exemplary damages that may be properly awarded]

*Bankers Life & Casualty Co. v. Crenshaw,* 486 U.S. 71, 88, 108 S.Ct. 1645, 1656, 100 L.Ed.2d 62 (1988) (O'Connor, J., concurring in part). Yet the Bank never requested trial court submission of the very factors which Texas adopted in *Kraus* to provide standards limiting the discretion of the jury. After failing to request that the jury be guided by the *Kraus* factors, the Bank complained to the court of appeals only that the size of the punitive damages verdict was the result of standardless jury discretion, and now raises the *Kraus* standards for the first time. Without any proper preservation of error on this issue, a remand is wholly unwarranted.

## III.

The requirement of preservation of error, the need for at least some consistency in the application of our law regardless of the immediate beneficiary, and the demand that our judiciary apply the law as written by the Legislature all may have become outmoded concepts to some, but to me they remain fundamental to our system of justice.

does not apply to exemplary damages resulting from malice ... or to an intentional tort.