KREITZMAN V. WOODFORD LIVESTOCK 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.
  
2-04-022-CV

GERALD SCOTT KREITZMAN AND APPELLANTS

ELIZABETH KREITZMAN

V.

WOODFORD LIVESTOCK APPELLEES

TRANSPORT AND GARY BOWLING

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In two issues, Appellants Gerald Scott Kreitzman and Elizabeth Kreitzman assert a factual insufficiency point as to the jury finding of no negligence of Gary Bowling and assert error on the part of the trial court in striking their Fourth Amended Original Petition.  We affirm.

II.  Background

This is the case of the green arrow.  Carrier Street, running east/west, and Great Southwest Parkway, running north/south, is an intersection wherein each of the four approaches contains two through lanes and a dedicated left-turn lane.  Traffic signals control the intersection such that traffic approaching east and west has a green light for through traffic.  A green arrow for traffic turning onto Great Southwest causes the through traffic signal to be red so that it is a protected turn for the left-turning traffic from both eastbound and westbound traffic on Carrier.  A simultaneous green light and green arrow for eastbound and westbound Carrier is not possible.

In the late afternoon of July 28, 2000, Gary Bowling, an experienced  twenty-five year truck driver, was approaching this intersection, eastbound on Carrier with a trailer full of raisins, intent on turning left through the intersection so as to be northbound on Great Southwest.  At the same time, Cathy Sneed was westbound on Carrier approaching the intersection from the opposite direction.  The view from the intersection is unobstructed.  She had previously stopped at a filling station because her brakes felt “soft” and the brake pedal was going down further than usual, and she was, in fact, on her cell phone to the car dealer about the problem as she approached the intersection. 

Bowling testified that as he approached the intersection and started making his turn, the traffic signal showed a green turn arrow allowing his turn.  As he entered the intersection, he saw Sneed approaching the intersection “pretty fast” from the opposite direction and stopped his truck in the middle of the intersection to avoid completely blocking both lanes of traffic in front of the oncoming Sneed.  When stopped, the truck blocked the inside through lane and may have blocked some or all of the outside through lane.  As Sneed saw the truck turning into the intersection, in the face of what she testified was a green light in her direction, she slammed on her brakes, which at that point were inoperative.  She then swerved left toward oncoming eastbound traffic.  Her car first passed in front of a car, also westbound on Carrier but stopped in the left turn lane, driven by Sam McMahan and containing two passengers, one of whom was John Lovett.  She then struck a Toyota Four-Runner traveling east on Carrier and then hit a second eastbound car containing the Krietzmans, sending their car into a telephone pole.  The Kreitzmans had serious injuries, resulting in a January 9, 2001 lawsuit against Sneed, Bowling, and his employer, Woodford Livestock Transport (hereinafter “WLT”). 

Eight months after filing suit, the Kreitzmans sent written discovery requests to WLT requesting,
 inter alia,
 Bowling’s driver’s logs.  In January 2003, the logs for the week of the accident were produced, but no others.  Finally in June 2003, two and one-half years after filing suit and a year and nine months after requesting them, the Kreitzmans filed a motion to compel the production of Bowling’s other driver’s logs, the response to which was that WLT did not have them.  The Kreitzmans then filed a Fourth Amended Original Petition eleven days before trial that as to WLT for the first time alleged negligent hiring, negligence per se regarding federal and state statutes, negligent record keeping, gross negligence, and a request for exemplary damages.  WLT responded with a motion to strike this pleading based on surprise and untimeliness, which the trial court granted.

At trial Lovett and Sneed testified that the light controlling westbound Carrier was green, and Elizabeth Kreitzman testified that the light controlling eastbound Carrier was green, which would have meant that Bowling did not have a protected-turn green arrow.  Investigating Officer Bement testified that the traffic lights were sequencing properly on the day of the accident, and that his report on the day of the accident indicated that both Sneed and Bowling had green lights for through traffic.  The sequence was a red light for through traffic with a green arrow, then a yellow arrow, and then solid green for through traffic.  McMahan’s testimony was confusing as to the color of the light and whether he had a green arrow, a green light, or a red light in the westbound Carrier left turn lane.  Apparently, at the time of trial he believed that the truck had a green arrow when it entered the intersection one-eighth of a mile in front of him, which had turned red by the time his car got to the intersection, but this was somewhat contradictory to his deposition and earlier statement wherein he indicated that the westbound Carrier light was green for through traffic, possibly at the time the truck turned into the intersection.  The through traffic signal light would, of course, have been green at the time he was sitting in the turn lane if he had arrived at the turn lane too late for the green arrow. The investigating officer reported that, after interviewing witnesses at the scene, the truck was at fault for failing to yield the right-of-way to Sneed.  
Therefore, there were three witnesses who testified that Bowling’s light was, or had to be, a green light; one witness, Bowling, who testified that the light was a green arrow; and one witness who gave somewhat contradictory testimony, but seemed to mostly support Bowling at trial.  On appeal, the Kreitzmana point out that if Bowling had a protected-turn green arrow, then the Kreitzmans, Sneed, and the occupants of the Toyota Four-Runner were intent on running a red light.  

A jury trial resulted in a finding of negligence against Sneed, no- negligence findings against Elizabeth Kreitzman, Bowling, and WLT, and an award of over $200,000 to the Kreitzmans, which was settled after trial with Sneed.  Following the denial of a motion for new trial, this appeal commenced. 

III.  Negligence of Gary Bowling

In their first issue, the Krietzmans complain that the evidence is factually insufficient to support the jury’s finding of no negligence as to Bowling.  Kreitzman contends that Bowling was negligent if he had a red light, a green light, or even a green arrow because he failed to keep a proper lookout.

A. Standard of Review

In reviewing a issue asserting that a finding is “against the great weight and preponderance” of the evidence, we must consider and weigh all of the evidence and set aside the finding only if the evidence is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust.  
Dow Chem. Co. v. Francis
, 46 S.W.3d 237, 242 (Tex. 2001); 
In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Generally, we do not have to detail supporting evidence when upholding factual sufficiency of the evidence underlying the trial court's judgment.  
Ellis County State Bank v. Keever
, 888 S.W.2d 790, 794 (Tex. 1994).
  
When conducting a factual sufficiency review, a court of appeals must not merely substitute its judgment for that of the trier of fact.  
Golden Eagle Archery, Inc. v. Jackson
, 116 S.W.3d 757, 761 (Tex. 2003).  The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony.  
Id
.

B. Application

After reviewing the entire record, particularly that of the eyewitnesses, and recalling that this court must not merely substitute its judgment for that of the jury’s, we cannot say that the evidence apportioning Sneed 100% of the negligence and Bowling 0% of the negligence is so weak or contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust.  The jury, and not this court, is in the best position to judge the credibility of the evidence.  We cannot discern facial expressions, hear voice inflections, observe body language or witness overall demeanor from a cold black and white record.  Sneed’s first issue is overruled.

IV.  Stricken Pleadings

Eleven days before trial, July 24, 2003, and two and one-half months after the scheduling order deadline of May 5, 2003, the Kreitzmans amended their pleadings with their Fourth Amended Original Petition alleging against WLT for the first time negligent hiring, negligence per se regarding federal and state statutes, negligent record keeping, gross negligence, and a request for exemplary damages.   Only the record keeping question is presented on appeal.  Because error, if any, in striking the pleading is harmless, we need not reach the correctness of the court’s decision.  Since the jury found Bowling not negligent, which we have affirmed, it is axiomatic that the appropriateness of WLT’s record keeping could not have been a proximate cause of the accident, and as such, the Kreitzmans’ second issue is overruled.

V.  Conclusion

Having overruled the Kreitzmans’ two issues, the judgment of the trial court is affirmed. 

BOB MCCOY

JUSTICE

PANEL A: DAUPHINOT, GARDNER, and MCCOY, JJ.

DELIVERED: November 3, 2005

     

FOOTNOTES
1:
See
 
Tex. R. App. P. 47.4
.