COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.  2-04-022-CV

 

 

GERALD SCOTT KREITZMAN AND                                        APPELLANTS

ELIZABETH
KREITZMAN

 

                                                   V.

 

WOODFORD LIVESTOCK                                                       APPELLEES

TRANSPORT
AND GARY BOWLING

 

                                              ------------

 

            FROM
THE 96TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








In two issues, Appellants
Gerald Scott Kreitzman and Elizabeth Kreitzman assert a factual insufficiency
point as to the jury finding of no negligence of Gary Bowling and assert error
on the part of the trial court in striking their Fourth Amended Original Petition.  We affirm.

II.  Background

This is the case of the green
arrow.  Carrier Street, running
east/west, and Great Southwest Parkway, running north/south, is an intersection
wherein each of the four approaches contains two through lanes and a dedicated
left-turn lane.  Traffic signals control
the intersection such that traffic approaching east and west has a green light
for through traffic.  A green arrow for
traffic turning onto Great Southwest causes the through traffic signal to be
red so that it is a protected turn for the left-turning traffic from both
eastbound and westbound traffic on Carrier. 
A simultaneous green light and green arrow for eastbound and westbound
Carrier is not possible.








In the late afternoon of July
28, 2000, Gary Bowling, an experienced 
twenty-five year truck driver, was approaching this intersection,
eastbound on Carrier with a trailer full of raisins, intent on turning left
through the intersection so as to be northbound on Great Southwest.  At the same time, Cathy Sneed was westbound
on Carrier approaching the intersection from the opposite direction.  The view from the intersection is
unobstructed.  She had previously stopped
at a filling station because her brakes felt Asoft@ and the
brake pedal was going down further than usual, and she was, in fact, on her
cell phone to the car dealer about the problem as she approached the
intersection. 

Bowling testified that as he
approached the intersection and started making his turn, the traffic signal
showed a green turn arrow allowing his turn. 
As he entered the intersection, he saw Sneed approaching the
intersection Apretty fast@ from the opposite direction and stopped his truck in the middle of
the intersection to avoid completely blocking both lanes of traffic in front of
the oncoming Sneed.  When stopped, the
truck blocked the inside through lane and may have blocked some or all of the
outside through lane.  As Sneed saw the
truck turning into the intersection, in the face of what she testified was a
green light in her direction, she slammed on her brakes, which at that point
were inoperative.  She then swerved left
toward oncoming eastbound traffic.  Her
car first passed in front of a car, also westbound on Carrier but stopped in
the left turn lane, driven by Sam McMahan and containing two passengers, one of
whom was John Lovett.  She then struck a
Toyota Four-Runner traveling east on Carrier and then hit a second eastbound
car containing the Krietzmans, sending their car into a telephone pole.  The Kreitzmans had serious injuries,
resulting in a January 9, 2001 lawsuit against Sneed, Bowling, and his
employer, Woodford Livestock Transport (hereinafter AWLT@). 








Eight months after filing
suit, the Kreitzmans sent written discovery requests to WLT requesting,
inter alia, Bowling=s driver=s logs.  In January 2003, the
logs for the week of the accident were produced, but no others.  Finally in June 2003, two and one-half years
after filing suit and a year and nine months after requesting them, the
Kreitzmans filed a motion to compel the production of Bowling=s other driver=s logs, the
response to which was that WLT did not have them.  The Kreitzmans then filed a Fourth Amended
Original Petition eleven days before trial that as to WLT for the first time
alleged negligent hiring, negligence per se regarding federal and state
statutes, negligent record keeping, gross negligence, and a request for
exemplary damages.  WLT responded with a
motion to strike this pleading based on surprise and untimeliness, which the
trial court granted.








At trial Lovett and Sneed
testified that the light controlling westbound Carrier was green, and Elizabeth
Kreitzman testified that the light controlling eastbound Carrier was green,
which would have meant that Bowling did not have a protected-turn green
arrow.  Investigating Officer Bement
testified that the traffic lights were sequencing properly on the day of the
accident, and that his report on the day of the accident indicated that both
Sneed and Bowling had green lights for through traffic.  The sequence was a red light for through
traffic with a green arrow, then a yellow arrow, and then solid green for
through traffic.  McMahan=s testimony was confusing as to the color of the light and whether he
had a green arrow, a green light, or a red light in the westbound Carrier left
turn lane.  Apparently, at the time of
trial he believed that the truck had a green arrow when it entered the
intersection one-eighth of a mile in front of him, which had turned red by the
time his car got to the intersection, but this was somewhat contradictory to
his deposition and earlier statement wherein he indicated that the westbound
Carrier light was green for through traffic, possibly at the time the truck
turned into the intersection.  The
through traffic signal light would, of course, have been green at the time he
was sitting in the turn lane if he had arrived at the turn lane too late for
the green arrow. The investigating officer reported that, after interviewing
witnesses at the scene, the truck was at fault for failing to yield the
right-of-way to Sneed.  Therefore, there
were three witnesses who testified that Bowling=s light was, or had to be, a green light; one witness, Bowling, who
testified that the light was a green arrow; and one witness who gave somewhat
contradictory testimony, but seemed to mostly support Bowling at trial.  On appeal, the Kreitzmana point out that if
Bowling had a protected-turn green arrow, then the Kreitzmans, Sneed, and the
occupants of the Toyota Four-Runner were intent on running a red light.  








A jury trial resulted in a
finding of negligence against Sneed, no- negligence findings against Elizabeth
Kreitzman, Bowling, and WLT, and an award of over $200,000 to the Kreitzmans,
which was settled after trial with Sneed. 
Following the denial of a motion for new trial, this appeal commenced. 

III.  Negligence of Gary Bowling

In their first issue, the
Krietzmans complain that the evidence is factually insufficient to support the
jury=s finding of no negligence as to Bowling.  Kreitzman contends that Bowling was negligent
if he had a red light, a green light, or even a green arrow because he failed
to keep a proper lookout.

A. Standard of Review

In reviewing a issue asserting that a finding is Aagainst the great
weight and preponderance@ of the evidence, we must consider and
weigh all of the evidence and set aside the finding only if the evidence is so
weak or the finding is so contrary to the great weight and preponderance of the
evidence as to be clearly wrong and unjust. 
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); In
re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).








Generally,
we do not have to detail supporting evidence when upholding factual sufficiency
of the evidence underlying the trial court's judgment.  Ellis County State Bank v. Keever, 888
S.W.2d 790, 794 (Tex. 1994).  When conducting a factual sufficiency
review, a court of appeals must not merely substitute its judgment for that of
the trier of fact.  Golden Eagle
Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).  The trier of fact is the sole judge of the
credibility of witnesses and the weight to be given to their testimony.  Id.

B. Application

After reviewing the entire
record, particularly that of the eyewitnesses, and recalling that this court
must not merely substitute its judgment for that of the jury=s, we cannot say that the evidence apportioning Sneed 100% of the
negligence and Bowling 0% of the negligence is so weak or contrary to the great
weight and preponderance of the evidence as to be clearly wrong and
unjust.  The jury, and not this court, is
in the best position to judge the credibility of the evidence.  We cannot discern facial expressions, hear
voice inflections, observe body language or witness overall demeanor from a
cold black and white record.  Sneed=s first issue is overruled.

IV.  Stricken Pleadings








Eleven days before trial,
July 24, 2003, and two and one-half months after the scheduling order deadline
of May 5, 2003, the Kreitzmans amended their pleadings with their Fourth
Amended Original Petition alleging against WLT for the first time negligent
hiring, negligence per se regarding federal and state statutes, negligent
record keeping, gross negligence, and a request for exemplary damages.   Only the record keeping question is
presented on appeal.  Because error, if
any, in striking the pleading is harmless, we need not reach the correctness of
the court=s
decision.  Since the jury found Bowling
not negligent, which we have affirmed, it is axiomatic that the appropriateness
of WLT=s record keeping could not have been a proximate cause of the
accident, and as such, the Kreitzmans= second issue is overruled.

V.  Conclusion

Having overruled the
Kreitzmans= two issues,
the judgment of the trial court is affirmed. 

 

 

BOB MCCOY

JUSTICE

 

PANEL A:   DAUPHINOT, GARDNER, and MCCOY, JJ.

 

DELIVERED:
November 3, 2005

     











[1]See Tex. R. App. P. 47.4.